IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CORDIS CORPORATION | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 97-550-SLR |
| v. | ) | (Consolidated) |
| | ) | |
| MEDTRONIC VASCULAR, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| ------------------------------------------ | | |
| | ) | |
| MEDTRONIC VASCULAR, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 97-700-SLR |
| | ) | |
| v. | ) | |
| | ) | |
| CORDIS CORPORATION; JOHNSON & JOHNSON; and EXPANDABLE GRAFTS PARTNERSHIP, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| ------------------------------------------ | | |

**CORDIS' REVISED PROPOSED JURY INSTRUCTIONS**

As AVE noted in submission yesterday of revised proposed jury instructions, the parties were unable to confer over the weekend regarding instructions. Cordis therefore submits the following revised proposed jury instructions, reflecting revisions to the joint proposed instructions filed February 9, 2005. The revised sections are sections 2.4 (Cordis' Version), 3.6 (Cordis' Version), 4.4, 4.6, 4.9, and 5.5. The revised instructions also include a revised version of the public use instruction originally proposed by AVE. (AVE has proposed a different public use instruction in its recent submission.) Cordis also separately submits a revised proposed special verdict form.

Cordis' revised instructions include the following changes.

1. Cordis' versions of instructions 2.4 and 5.5 have been revised to conform to the Court's recent ruling that the jury will be informed as needed that certain issues "are not in dispute."

2. Cordis' proposed special verdict form, which is being separately filed, has been revised to reflect the fact that Cordis' proof with respect to substantially uniform thickness will focus on the individual rings of the AVE stents. It has also been revised to accept AVE's suggestion to refer to the "wall" instead of the "wall surface" of the tubular member. Instruction 3.6 has also been revised to refer to the "wall" of a tubular member.

3. Instruction 4.4 has been revised to accept AVE's proposed language with respect to the knowledge of one skilled in the art (and accordingly strikes AVE's comment as to that language.).

4. Instruction 4.6 has been revised to include an instruction regarding conception and reduction to practice.

5. The public use instruction originally proposed by AVE has been revised to conform more closely to the Uniform Instructions.

6. Instruction 4.9, regarding secondary considerations concerning obviousness, has been added.

### 2.4   Summary of Patent Issues [1] – Cordis' Version

In this case, you must decide two issues according to the instructions that I shall give you.

The first issue you must decide is whether Cordis has proven by a preponderance of the evidence that Medtronic AVE's manufacture, sale or offer for sale of balloon-expandable stents infringes any of the asserted claims of the '762, or '984 patent.

It is not disputed that the Medtronic AVE stents satisfy all the limitations of the asserted claims with the exception of the limitation included in each claim requiring that the "wall surface" of the "tubular member" or members that make up the stent have a "substantially uniform thickness" as I will define that phrase for you.  (I will explain the concept of "limitations" to you more fully in a short while.)  Accordingly, in deciding whether the Medtronic AVE stents infringe the asserted claims you will have to determine only whether they infringe or satisfy the "substantially uniform thickness" limitation in each claim.  It is also not disputed that each sinusoidal ring in the Medtronic AVE stents is a "tubular member" with a "wall surface."

The second issue you must decide is whether Medtronic AVE has proven by clear and convincing evidence that any of the asserted claims of the '762 and '984 patents is invalid.

Sources:  Uniform Instructions § 2.4; *Johns Hopkins*, 894 F. Supp. at 831; D.I. 1115; *See* Cordis' Motion in Limine No. 1, Jan. 25, 2005; *Cordis v. Medtronic Vascular*, 339 F.3d 1352, 1362 (Fed. Cir. 2004); *Cordis Corp. v. Boston Scientific Corp.*, 99 Fed. Appx. 928 (Fed. Cir. May 28, 2004).

---

[1] Medtronic AVE's comment: see Medtronic AVE's Motion *in Limine* No. 1 and Medtronic AVE's Response to Cordis' Motion *in Limine* number 3.

### 3.6    Infringement – Cordis' Version

Cordis asserts that Medtronic AVE's stents infringe or satisfy the "substantially uniform thickness" limitation of the asserted claims.  A limitation is infringed or satisfied if it is present in the accused device or devices, in this case the Medtronic AVE stents.  To find that a Medtronic AVE stent infringes the "substantially uniform thickness" limitation in an asserted claim, you must find by a preponderance of the evidence that the wall of at least one tubular member in the Medtronic AVE stent (with respect to claims under the '984 patent, each of the "plurality of . . . tubular members" that make up the stent) has a substantially uniform thickness.

Sources:  Uniform Instructions § 3.8.

**4.4    Scope and Content of the Prior Art – Disputed in Part**

As I just instructed you, in arriving at your decision on the issue of whether or not the claimed invention would have been obvious to one of ordinary skill in the art, you must first determine the scope and content of the prior art.  This means that you must determine what prior art is reasonably pertinent to the particular problem with which the inventor was faced.  The scope and content of the prior art includes references from those areas a person with ordinary skill in the art would look to in solving a particular problem.  The hypothetical person of skill in the art knows of all such references.  The prior art includes the following:

1. Public knowledge or use in this country, before the date of invention of the patent-in-suit;

2. Patents or printed publications in this or a foreign country, before the date of invention of the patent-in-suit;

3. Patents issued more than one year prior to the date of the application for the patent-in-suit;

4. Printed publications having a publication date more than one year prior to the date of the application for the patent-in-suit;

5. Public use or sale in the United States, more than one year prior to the date of the application for the patent-in-suit;

6. United States patents granted on an application by another filed in the United States before the date of invention of the patent-in-suit.

**[Cordis' Version:**  *Cordis and Medtronic AVE disagree as to whether some references are analogous prior art. An item of prior art is analogous if it comes from the same field in which the patentee was working, whether or not it concerns the problem the patentee was*

*addressing. An item of prior art is also analogous even if it was not from the same field in which the patentee was working, so long as it was reasonably pertinent to the particular problem that the patentee was trying to solve. If you determine that the reference is not analogous art, then you should ignore it in deciding whether the patent in suit would have been obvious.]*[2]


Sources:  Uniform Jury Instructions § 4.8.1; *Johns Hopkins*, 894 F. Supp. at 836-37; 35 U.S.C. § 102; D.I. 1115; [**Cordis' Version:** *AIPLA Instructions Obviousness No. 8; In re Wood, 599 F.2d 1032 (C.C.P.A. 1979); Wang Lab., Inc. v. Toshiba Corp., 993 F.2d 858  1767 (Fed. Cir. 1993); In re Clay, 966 F.2d 656  (Fed. Cir. 1992); Uniform Jury Instructions, § 4.8.5*]

---

[2] Medtronic AVE Comment:  Cordis' proposed language on analogous prior art is argumentative and usurps the fact-finding role of the jury.

**Public Use – Cordis Version**

A public use by a person other than the inventor of the patent in suit, who is under no limitation, restriction or obligation of secrecy by the inventor may also invalidate a patent if it occurred more than one year before the filing of the application for the patent.

An invention is publicly used by another when it is made accessible to any member of the public other than the inventor or a person under an obligation of secrecy imposed by the inventor.  Secret non-public use by other than the inventor, however, is not an invalidating public use.  Thus, a patent is not invalidated if the particular device, composition or process if used by someone other than the inventor, under circumstances where it is not made accessible to the public.

Source:  Uniform Jury Instruction 4.7, "Public Use."

### 4.6    Date of Invention, Priority Date – Cordis' Proposal

As I have previously told you, the prior art can include materials that predate "the date of invention of the patent-in-suit" or the "invention date." Without any evidence to the contrary, the "invention date," also referred to as the "priority date," is presumed to be the date the application was filed.

**Continuation in Part**

A later filed continuation-in-part patent, such as the '762 patent, is entitled to claim the benefit of the filing date of an earlier patent provided the earlier patent, in this case patent number 4,733,665 or the "'665 patent," provides a sufficient written description of the invention claimed in the continuation patent.

To meet the written description requirement, the earlier application does not have to describe the claimed invention in the same words. Instead, the earlier application only needs to reasonably convey to one skilled in the art that the inventor had possession of the claimed invention. In deciding the issue, the patent as a whole must be considered. Drawings alone may provide a written description of an invention.

Medtronic AVE must demonstrate by clear and convincing evidence that the claims in issue in the '762 patent are not entitled to the November 7, 1985 filing date of its parent – the '665 patent.

**Conception and Reduction to Practice**

In order to determine whether '417 patent constitutes "prior art" to the '984 patent, you must determine whether Dr. Schatz conceived and reduced to practice his invention in the United States prior to March 28, 1988, the filing date of the '417 patent.

As I have told you, the prior art can include materials that predate "the date of invention of the patent-in-suit" or the "invention date." Without evidence to the contrary, the "invention date" is presumed to be the date the application was filed.

Cordis may establish an earlier invention date in two ways. It can offer evidence to show that the inventor conceived and reduced to practice his invention before the date of the alleged prior art. Cordis can alternatively offer evidence to show that the inventor conceived of his invention prior to the date of the alleged prior art and he proceeded with reasonable diligence from a date just prior to the date of the alleged prior art to the application filing date. Cordis does not need to establish both.

To have conceived of an invention, an inventor must have formed in his or her mind a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice. An idea is definite and permanent when the inventor has a specific, settled idea; a particular solution to the problem at hand, not just a general goal or research plan he hopes to pursue. The idea must be so settled and complete that only ordinary skill would be necessary to reduce it to practice without any extensive research or experimentation.

To show diligence, Cordis must establish that the inventor worked reasonably hard on reducing the claimed invention to practice during the relevant period of time.

Actual reduction to practice occurs when the inventor constructs a product that is within the scope of the patent claims and demonstrates the capacity of the inventive idea to achieve its intended purpose. The nature of the testing which may be required varies with the circumstances and in some cases a simple test or inspection will suffice.

The invention must be independently corroborated by evidence other than by testimony of the inventor or by self-serving documents originating from him. Independent

corroboration may consist of testimony of a witness, other than the inventor, to the actual conception and reduction to practice or it may consist of evidence of surrounding facts and circumstances independent of information received from the inventor. Writings, drawing, or models constitute corroborating evidence where there is proof that they existed at the pertinent time.

Sources: D.I. 1115; 35 U.S.C. § 112; 35 U.S.C. § 120; *Vas Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1560 (Fed. Cir. 1991); *In re Wright*, 866 F.2d 422, 425 (Fed. Cir. 1989*); Ralston Purina Co. v. Far-Mar Co., Inc.*, 772 F.2d 1570, 1572-74 (Fed. Cir. 1985); *In re Hayes Microcomputer Prods., Inc. Litig.*, 982 F.2d 1527, 1533 (Fed. Cir. 1992); *Biacore v. Thermo Bioanalysis Corp.*, 79 F. Supp. 2d 422, 467-69 (D. Del. 1999).

### 4.9   Objective Criteria Concerning Obviousness (Secondary Considerations) – Disputed in Part

In making your decision as to the obviousness or non-obviousness of the claimed invention, you must consider, along with the other factors I have identified for you, the following objective evidence which may tend to show non-obviousness of the claims at issue:

1. Commercial success, if any, of stents covered by the asserted claims of the patents in suit;

2. A long felt but unsolved need in the art which was satisfied by the claimed invention at issue;

3. The failure of others to make the claimed invention at issue;

4. Copying of the claimed invention at issue by others in the field;

5. Unexpected results achieved by the invention;

6. Praise of the claimed invention by the infringer or others in the field;

7. The taking of licenses under the patent by others; and

8. Any expressions of disbelief or skepticism that may have been expressed towards the claimed invention.

However, there must be a connection between the evidence showing any of these factors and the claimed invention if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue.  For example, if commercial success is due to advertising, promotion, salesmanship or the like, or is due to features of the product other than those claimed in the patent in suit, [**Medtronic AVE Version:** *including features covered by other patents,*] then any commercial success may have no relation to the issue of obviousness.  [**Cordis version:** *Cordis establishes the required nexus between an asserted patent and the commercial success of a product if it shows that the product practices the patent.*]

It is inappropriate to disregard any proper evidence relating to the issue of obviousness.  Although some parts of the evidence may weigh more heavily than others, your decision of obviousness or non-obviousness should take all the proper evidence into account.

[Cordis' version: *The objective considerations I have listed can provide the most probative evidence of nonobviousness in the record, and enable you to avert the trap of hindsight.*]

Sources:  Uniform Instructions § 4.8.4; D.I. 1115; [Cordis Version*: Custom Accessories, Inc. v. Jeffrey-Allan Indus., 807 F.2d 955, 960 (Fed. Cir. 1986);  Demaco Corporaation v. F. Von Langsdorff Licensing Limted, 851 F.2d 1387, 1392-94* (Fed  Cir. 1988)].

### 5.5  Instructions Regarding Special Verdict – Cordis Proposal

As I've explained, there are two categories of issues for you to decide in this case. These issues are presented in the two categories of questions on the special verdict form – one addressing infringement of the asserted patents and the other addressing their validity.

First, in order to determine whether the Medtronic AVE stents infringe the asserted claims, you must decide whether Cordis has shown by a preponderance of the evidence that they infringe or satisfy the "substantially uniform thickness" limitation in those claims. As I advised you earlier, it is not disputed that the Medtronic AVE stents satisfy all the other elements or limitations of the asserted claims. It is also not disputed that each sinusoidal ring in the Medtronic AVE stents is a "tubular member" with a "wall surface."

The second category of issues you must decide is the validity of the asserted patent claims. Here the questions you must answer, the second set of questions posed on the verdict form, are whether Medtronic AVE has shown by clear and convincing evidence that the prior art rendered the asserted claims obvious to one of ordinary skill in the art as of the invention dates of the patents.

                ASHBY & GEDDES

                */s/ John G. Day*
                _____
                Steven J. Balick (I.D. #2114)
                John G. Day (I.D. #2403)
                222 Delaware Avenue, 17th Floor
                P.O. Box 1150
                Wilmington, DE 19801
                (302) 654-1888

                *Attorneys for Cordis Corporation and related Johnson & Johnson parties*

*Of Counsel:*

Gregory L. Diskant
William F. Cavanaugh, Jr.
Kim J. Landsman
Eugene M. Gelernter
Michael J. Timmons
PATTERSON, BELKNAP, WEBB, & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
212-336-2000

Theodore B. Van Itallie, Jr.
Eric I. Harris
JOHNSON & JOHNSON
One Johnson & Johnson Plaza
New Brunswick, NJ 08933
732-524-0400

Dated: March 8, 2005
154365.1

# **CERTIFICATE OF SERVICE**

I hereby certify that on the 8th day of March, 2005, the attached **CORDIS'**

**REVISED PROPOSED JURY INSTRUCTIONS** was served upon the following counsel of

record in the manner indicated:

| | |
|---|---|
| Karen Jacobs Louden, Esquire<br>Morris Nichols Arsht & Tunnell<br>1201 N. Market Street<br>Wilmington, DE  19801 | **VIA ECF FILE AND SERVE** |
| Raphael V. Lupo, Esquire<br>McDermott, Will & Emery<br>c/o Karen Jacobs Louden, Esquire<br>Morris Nichols Arsht & Tunnell<br>1201 N. Market Street<br>Wilmington, DE  19801 | **VIA FACSIMILE** |
| Josy W. Ingersoll, Esquire<br>Young Conaway Stargatt & Taylor<br>Rodney Square North<br>Wilmington, DE  19801 | **VIA ECF FILE AND SERVE** |
| George E. Badenoch, Esquire<br>Kenyon & Kenyon<br>One Broadway<br>New York, NY  10004 | **VIA FACSIMILE** |

                                                       */s/ John G. Day*
                                                       John G. Day