IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CORDIS CORPORATION, | ) | **REDACTED PUBLIC VERSION** |
|     *Plaintiff,* | ) | |
|     v. | ) | |
| MEDTRONIC AVE, INC., BOSTON SCIENTIFIC | ) | |
| CORPORATION and SCIMED LIFE SYSTEMS, | ) | C.A. No. 97-550-SLR |
| INC., | ) | (Consolidated) |
|     *Defendants.* | ) | |
| | ) | |
| | ) | |
| MEDTRONIC AVE, INC., | ) | |
|     *Plaintiff,* | ) | C.A. No. 97-700-SLR |
|     v. | ) | |
| CORDIS CORPORATION, et al., | ) | |
|     *Defendants.* | ) | |

**REPLY BRIEF IN SUPPORT OF CORDIS' MOTION TO
REINSTATE THE DAMAGES VERDICT AGAINST AVE
AND AWARD PREJUDGMENT INTEREST**

*Of Counsel:*

Gregory L. Diskant
William F. Cavanaugh, Jr.
Eugene M. Gelernter
Michael J. Timmons
Scott B. Howard
Rosa E. Son
PATTERSON, BELKNAP, WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

Theodore B. Van Itallie, Jr.
Eric I. Harris
JOHNSON & JOHNSON
One Johnson & Johnson Plaza
New Brunswick, NJ 08933

Dated: June 8, 2005

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888

*Attorneys for Cordis Corporation*

## INTRODUCTION

With AVE as with BSC, bifurcating damages from liability has served its purpose. It has confirmed that the NIR stent is an infringing product, rather than a non-infringing alternative, and thus restored the NIR stent to the status that provided the basis for the damages verdict in 2000. What remains – reinstating the damages verdict and awarding prejudgment interest – can be done on the papers and is not a reason for delay.

If anything, there are fewer damages issues to address for AVE than for BSC. In particular, there is no need to update AVE damages to account for post-verdict sales because AVE stopped selling the infringing MicroStent II and GFX stents prior to trial in 2000.

In large part, AVE echoes arguments that BSC offered, which Cordis previously addressed in its Reply Brief on damages against BSC (D.I. 1412).[1] Rather than repeat its position, Cordis incorporates Sections I-III and V of D.I. 1412 by reference.

### A. This Court Has Not Delayed and Should Not Delay a Determination of Damages Until After an Appeal on Liability

AVE misreads this Court's statement that "[d]amages will be bifurcated until we have addressed as a final matter validity and infringement," D.I. 1253 at 27:8-9, as a ruling that damages will be postponed until after another round of Federal Circuit appeals on liability. As discussed in D.I. 1412 at 1-2, this Court made no such ruling. AVE knows this.

**REDACTED**

Contrary to AVE's contention, a final judgment ordinarily *precedes* an appeal and is a prerequisite for an appeal. See 28 U.S.C. § 1291 ("[t]he courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States ....").

---

[1] Unless otherwise specified, all docket item numbers refer to C.A. No. 97-550-SLR.

With validity and infringement having been resolved (subject, of course, to the Court's rulings on post-trial motions), it now is appropriate to turn to damages.

Losing defendants always want to delay the entry of a damages judgment, but AVE takes that to an extreme.

**REDACTED**

There is no justification for the indefinite delay AVE seeks.

The *Boneau* case has been stayed as to Cordis pending arbitration of Cordis' license defense. D.I. 167 in C.A. No. 03-402-SLR. The eventual outcome of that arbitration is uncertain, but even if AVE were to prevail on the license issue, the same reasoning that led this Court to grant summary judgment of noninfringement of the Boneau patents in favor of BSC and Guidant would be equally applicable to Cordis. See D.I. 546 in C.A. No. 98-80.

**REDACTED**

Deciding lost profits in any patent case involves determining what sales the patentee would have made "but for" the defendant's infringement of the patent-in-suit. Thus, "[t]o recover lost profits damages, the patentee must show a reasonable probability that, 'but for' the infringement, it would have made the sales that were made by the infringer." Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1545 (Fed. Cir. 1995) (*en banc*). "'[T]h[e] question [is] primarily: had the Infringer not infringed, what would the Patentee Holder-Licensee have made?'" Id., quoting Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476, 507 (1964); see also King Instruments Corp. v. Perego, 65 F.3d 941, 952 (Fed. Cir. 1995) ("To recover lost profits

damages for patent infringement, the patent owner must show that it would have received the additional profits 'but for' the infringement.").

REDACTED However, the possibilities that the patentee or the accused infringer may have infringed someone else's patents are not part of the "but-for" analysis under Federal Circuit cases. They are not a defense to damages and are not a reason to delay a damages award. Under Rite-Hite and other cases, the damages inquiry focuses on the consequences of infringement of the patent-in-suit, not on the possibility that the patentee or the infringer may have infringed patents owned by others. Those possibilities are not part of the damages calculus.

REDACTED Patent cases are not global inquests into possible infringement of all patents in a given industry. If they were, then patent damages could never be determined until after the expiration of the six-year statutory limitations period following the sales on which a patentee seeks damages, because someone else might come out of the woodwork and contend that his patents were being infringed by the patentee or the accused infringer. That would be a recipe for unending delay.

"Fundamental principles of justice require [courts] to throw any risk of uncertainty [in calculating lost profits] upon the wrongdoer rather than upon the injured party." Kori Corp. v. Wilco Marsh Buggies & Draglines Inc., 761 F.2d 649, 655 (Fed. Cir. 1985), citing Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 563 (1931). If the speculative possibility of a different outcome in the *Boneau* and *Lau* cases were relevant to Cordis' damages from AVE's infringement – and it isn't – then uncertainty as to the eventual

outcome of those cases would be a risk that the "wrongdoer," i.e., AVE, should bear. It is not a reason to delay in reinstating the damages verdict.

B. **Prejudgment Interest**

1. **Because AVE Repeatedly Asked for Delay, It Cannot Use Delay as a Basis for Avoiding Prejudgment Interest**

REDACTED Cordis previously addressed a similar "delay" argument by BSC in D.I. 1412 at 8-11, which is incorporated by reference herein.

AVE's "delay" argument – like BSC's – is especially ironic because AVE sought delay and used it to its advantage by prolonging this litigation until after it had stopped selling the infringing MicroStent II and GFX and thereby avoided an injunction. After asking for delay and using delay to its advantage, AVE cannot assert delay as a reason for denying or reducing prejudgment interest. See Allen Archery, Inc. v. Browning Mfg. Co., 898 F.2d 787, 791-92 (Fed. Cir. 1990) (refusing to deny prejudgment interest where defendants contributed to delay).

REDACTED That delay pales in comparison to the delay that AVE engendered. For example, in June 1998, in response to Cordis' request for a December 1998 trial date, AVE asked the Court to stay discovery and allow early summary judgment motions "before we start talking about trial dates." D.I. 291 at 19. The ensuing summary judgment motions delayed the trial by many months without removing any patents or claims from the case. Similarly, in January 1999, when Cordis requested a November 1999 trial date, D.I. 400 at 13, 45, AVE asked for a trial date ten months later. Id. at 28-29, 37, 43.

Having sought delay and benefited from it, AVE cannot use delay as a reason to avoid or lower prejudgment interest. See Allen Archery, 898 F.2d at 791-92.

### 2. Prejudgment Interest Should Be Awarded at the Prime Rate

REDACTED                      However, this Court already has ruled that the rate for prejudgment interest against BSC in this case is the same rate BSC requested in the Israel case, i.e., the prime rate compounded monthly. The same rate should apply to AVE.

This Court routinely awards prejudgment interest at the prime rate in patent cases.[2] Other courts routinely do the same[3] -- or use a rate higher than the prime rate.[4] The

---

[2] See, e.g., Philips Electronics N. Am. Corp. v. Contec Corp., 2004 WL 1622442 at *2 (D. Del. July 12, 2004); Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co., 2004 WL 1305849 at *20 (D. Del. June 9, 2004) (Robinson, C.J.); IPPV Enters., LLC v. EchoStar Communs. Corp., 2003 WL 723260 at *3 (D. Del. Feb. 27, 2003); TA Instruments, Inc. v. Perkin-Elmer Corp., 277 F. Supp. 2d 367, 381 (D. Del. 2003) (Robinson, C.J.); Applera Corp. v. Micromass UK Ltd., 204 F. Supp. 2d 724, 783 (D. Del. 2002); C.R. Bard, Inc. v. Medtronic, Inc., 1999 WL 458305 at *15 (D. Del. June 15, 1999) (Robinson, C.J.); W.R. Grace & Co.-Conn. v. Intercat, Inc., 60 F. Supp. 2d 316, 332 (D. Del. 1999); Mobil Oil Corp. v. Amoco Chems. Corp., 915 F. Supp. 1333, 1370-1374 (D. Del. 1994); Mars Inc. v. Conlux USA Corp., 818 F. Supp. 707, 720-21 (D. Del. 1993); Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc., 633 F. Supp. 1047, 1057 (D. Del. 1986); Scott Paper Co. v. Moore Bus. Forms, Inc., 594 F. Supp. 1051, 1083 (D. Del. 1984) ("Awarding prejudgment interest in this manner [i.e., by application of the average annual prime rate] will compensate the patent owner for the lost use of money representing royalties due which were not paid when due."). Copies of the unpublished decisions cited in this footnote are included in alphabetical order in Exhibit 1 hereto.

[3] E.g., Aero Products Int'l, Inc. v. Intex Recreation Corp., 2004 WL 2091996 at *2 (N.D. Ill. Sept. 16, 2004); Lampi Corp. v. American Power Products, Inc., 2004 WL 1656547 at *8 (N.D. Ill. July 22, 2004); Lisle Corp. v. A.J. Mfg. Co., 2004 WL 765872 at *2 (N.D. Ill. Apr. 7, 2004); Glenayre Electronics, Inc. v. Jackson, 2003 WL 21639116 at *8 (N.D. Ill. July 9, 2003); NTP Inc. v. Research in Motion, Ltd., 270 F. Supp. 2d 751, 763 (E.D. Va. 2003); Advanced Display Sys., Inc. v. Kent State Univ., 2002 WL 1489555 at *9 (N.D. Tex. July 10, 2002); Atmel Corp. v. Silicon Storage Techn., Inc., 202 F. Supp. 2d 1096, 1101 (N.D. Cal. 2002); Bic Corp. v. First Prominence Co., Ltd., 2001 WL 1597983 at *3 (S.D.N.Y. Dec. 10, 2001); Chemetall GmbH v. ZR Energy, Inc., 2001 WL 1104604 at *18 (N.D. Ill. Sept. 18, 2001); Durel Corp. v. Osram Sylvania, Inc., 2000 WL 33709289 at *1 (D. Ariz. Apr. 27, 2000); Promega Corp. v. Lifecodes Corp., 1999 U.S. Dist. LEXIS 21094 at *57 (D. Utah Oct. 27, 1999); Unique Coupons v. Menasha Corp., 1999 U.S. Dist. LEXIS 21744 at *46 (N.D. Ill. Aug. 30, 1999), rev'd on other grounds sub nom.; Unique Coupons, Inc. v. Northfield Corp., 12 Fed. Appx. 928, 929 (Fed. Cir. 2001); C&F Packing Co. v. IBP, Inc., 1999 WL 102798 at *1 (N.D. Ill. Feb. 22, 1999); Mickowski v. Visi-Trak Corp., 36 F. Supp. 2d 171, 182 (S.D.N.Y. 1999); Nutrivida, Inc. v. Inmuno Vital, Inc., 46 F. Supp. 2d 1310, 1317 (S.D. Fla. 1998); Construction Tech., Inc. v. Cybermation, Inc., 965 F. Supp. 416, 441-42 (S.D.N.Y. 1997); Stryker Corp. v. Intermedics

Federal Circuit has repeatedly affirmed the use of the prime rate for prejudgment interest. E.g., Roton Barrier, Inc. v. Stanley Works, 79 F.3d 1112, 1115 (Fed. Cir. 1996); Uniroyal Inc. v. Rudkin-Wiley Corp., 939 F.2d 1540, 1545 (Fed. Cir. 1991); Studiengesellschaft Kohle v. Dart Indus., Inc., 862 F.2d 1564, 1579-80 (Fed. Cir. 1988); Lam, Inc. v. Johns-Manville Corp., 718 F.2d 1056, 1066 (Fed. Cir. 1983). In addition, the Federal Circuit has rejected **REDACTED** that the patentee must offer evidence of borrowing at the prime rate in order to obtain prejudgment interest at that rate. Studiengesellschaft Kohle, 862 F.2d at 1579-80.

The prime rate represents the rate at which banks are willing to lend money to their best customers. Mars, 818 F. Supp. at 720-21. As such, it is an appropriate rate to reflect the value of money that the patentee may never recover because of the uncertainties of litigation. In contrast, the T-bill rate,                    , is the rate at which cash in hand can be invested without risk at a low rate of return. Id. Congress has mandated the use of the T-bill rate for *post*-judgment interest, see 28 U.S.C. § 1961(a), but has not mandated that rate for

---

Orthopedics, Inc., 898 F. Supp. 116, 123 (E.D.N.Y. 1995); Grain Processing Corp. v. American Maize-Products Co., 893 F. Supp. 1386, 1396 (N.D. Ind. 1995), vacated on other grounds, 108 F.3d 1392 (Fed. Cir. 1997); A&L Tech. v. Resound Corp., 1995 WL 415146 at *5 (N.D. Cal. June 29, 1995); Minco, Inc. v. Combustion Eng'g, Inc., 903 F. Supp. 1204, 1225 (E.D. Tenn. 1995); Valmet Paper Machi., Inc. v. Beloit Corp., 895 F. Supp. 1158,1177 (W.D. Wis. 1995), rev'd on other grounds, 105 F.3d 1409 (Fed. Cir. 1997); Wisconsin Alumni Research Found. v. General Elec. Co., 880 F. Supp. 1266, 1278 (E.D. Wis. 1995); Maxwell v. J. Baker, Inc., 879 F. Supp. 1007, 1009 (D. Minn. 1995); Roton Barrier, Inc. v. Stanley Works, 1995 U.S. Dist. LEXIS 5770 at *1 (E.D. Mo. Jan. 27, 1995), aff'd, 79 F.3d 1112, 1115 (Fed. Cir. 1996) (affirming the award of prejudgment interest at the prime rate). Copies of the unpublished decisions cited in this footnote are included in alphabetical order in Exhibit 2 hereto.

[4] E.g., Northlake Mktg. & Supply, Inc. v. Glaverbel, S.A., 72 F. Supp. 2d 893, 903 (N.D. Ill. 1999) (prime plus one); Michaels v. Art Betterley Enterprises, Inc., 1996 WL 722007 at *3 (W.D.N.Y. Dec. 13, 1996) (above prime); Pentech Int'l, Inc. v. Hayduchok, 931 F. Supp. 1167, 1177 (S.D.N.Y. 1996) (prime plus one); CVI/Beta Ventures, Inc. v. Tura LP, 905 F. Supp. 1171, 1203 (E.D.N.Y. 1995) (prime plus one), rev'd on other grounds, 112 F.3d 1146 (Fed. Cir. 1997); Code-Alarm, Inc. v. Electromotive Techs. Corp., 1995 U.S. Dist. LEXIS 22397 at *10 (E.D.

prejudgment interest. That distinction makes sense, because prior to judgment the outcome of a lawsuit is uncertain and a claim for damages is not the equivalent of cash in hand.

In Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc., 874 F.2d 431, 436 - 37 (7th Cir. 1989), Judge Posner explained why the prime rate is more appropriate basis for prejudgment interest than the lower T-bill rate:

> **.... [W]e suggest that district judges use the prime rate for fixing prejudgment interest .... That is a readily ascertainable figure which provides a reasonable although rough estimate of the interest rate necessary to compensate plaintiffs not only for the loss of the use of their money but also for the risk of default.** The defendant who has violated the plaintiff's rights is in effect a debtor of the plaintiff until the judgment is entered and paid or otherwise collected. At any time before actual payment or collection of the judgment the defendant may default and the plaintiff come up empty-handed. The plaintiff is an unsecured, uninsured creditor, and the risk of default must be considered in deciding what a compensatory rate of interest would be. (Emphasis added).

Judge Posner further stated (id.):

> A federal statute, 28 U.S.C. § 1961, fixes the *post* judgment interest rate for federal cases…as the rate on 52- week Treasury bills at the last auction of those bills before the judgment was entered. **This rate is too low, because there is no default risk with Treasury bills.** .... [T]he courts are bound by that rate so far as postjudgment interest is concerned. But prejudgment interest is governed by federal common law, and the courts are free to adopt a more discriminating approach….We have chosen the prime rate for convenience; a more precise estimate would be the interest rate paid by the defendant for unsecured loans. (Bold type added; italics in original).

This Court has applied the same rationale in awarding prejudgment interest at the prime rate:

> **If the Court's purpose here is to award interest to make [plaintiff] whole for the loss of the use of this money during the**

---

Mich. Apr. 28, 1995) (prime plus two). Copies of the unpublished decisions cited in this footnote are included in alphabetical order in Exhibit 3 hereto.

> period from the date of the harm to the date of the judgment, **the prime rate ... serves that purpose better than the Treasury Bill rate ....** In this case the cost of borrowing money – and not the rate of return on investing money – provides a better measure of the harm [plaintiff] suffered as a result of the loss of the use of money over time. (Emphasis added).

Mars, 818 F. Supp. at 720-21.

### 3. This Court Should Follow its Practice of Awarding Interest on Pre-Tax Damages

**REDACTED** The norm in this Court and others is not to do so. See cases cited in footnotes 1-3, supra. As the Federal Circuit has held, an "after-tax" approach like the one AVE advocates "(1) ha[s] been rejected by the case law; (2) would be speculative due to [plaintiff's] particular tax situation, including what actions [plaintiff] might have taken to reduce such taxes in prior years; and (3) was not provided for by Congress ...." Hughes Aircraft Co. v. U.S., 86 F.3d 1566, 1575 (Fed. Cir. 1996).

Other courts have reached the same conclusion. E.g., Standard Mfg. Co. v. United States, 42 Fed. Cl. 748, 778 (1999) ("This court is satisfied that appropriate taxation will occur at the time when an award is received in this case, and declines to apply defendant's approach."); Brunswick Corp. v. U.S., 36 Fed. Cl. 204, 219 -20 (1996) (same); A&L Tech. v. Resound Corp., 1995 WL 415146 at *5 (N.D. Cal. June 29, 1995) (Ex. 2) ("prejudgment interest in this case will be calculated based on pre-tax royalty figures."); Polaroid Corp. v. Eastman Kodak Co., 1990 WL 324105 (D. Mass. Oct. 12, 1990) (Ex. 4); Micro Motion, Inc. v. Exac Corp., 761 F. Supp. 1420, 1436 (N.D. Cal. 1991) ("prejudgment interest will be paid on the full amount of damages awarded").



-9-

**REDACTED**

For example, J&J paid almost $600 million of deferred federal income taxes in 1998. J&J presumably would have been able to defer taxes on some or all of the additional revenues Cordis would have received "but for" AVE's infringing acts. Determining *how much* of the tax liability J&J could have deferred is a complex matter that would essentially require the Court to explore all of J&J's tax alternatives for the years in question – in effect, re-doing J&J's corporate tax return. Instead of undertaking that task, AVE has simply ignored the extent to which J&J could have deferred the payment of taxes on additional income.

**REDACTED**

To the extent AVE uses an unrealistically high rate, it again would under-compensate Cordis.

## **CONCLUSION**

For the reasons set forth above and in Cordis' opening brief, this Court should reinstate and update the damages verdict in this case.

ASHBY & GEDDES

/s/ *John G. Day*
_____
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888

*Attorneys for Cordis Corporation*

*Of Counsel:*

Gregory L. Diskant
William F. Cavanaugh, Jr.
Eugene M. Gelernter
Michael J. Timmons
Scott B. Howard
Rosa E. Son
PATTERSON, BELKNAP, WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

Theodore B. Van Itallie, Jr.
Eric I. Harris
JOHNSON & JOHNSON
One Johnson & Johnson Plaza
New Brunswick, NJ 08933

Dated: June 8, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of June, 2005, the attached **REDACTED PUBLIC VERSION OF REPLY BRIEF IN SUPPORT OF CORDIS' MOTION TO REINSTATE THE DAMAGES VERDICT AGAINST AVE AND AWARD PREJUDGMENT INTEREST** was served upon the following counsel of record in the manner indicated:

| | |
|---|---|
| Karen Jacobs Louden, Esquire<br>Morris Nichols Arsht & Tunnell<br>1201 N. Market Street<br>Wilmington, DE 19801 | HAND DELIVERY |
| Raphael V. Lupo, Esquire<br>McDermott, Will & Emery<br>600 13th Street, N.W.<br>Washington, D.C. 20005-3096 | VIA FEDERAL EXPRESS |
| Josy W. Ingersoll, Esquire<br>Young Conaway Stargatt & Taylor<br>Rodney Square North<br>Wilmington, DE 19801 | HAND DELIVERY |
| George E. Badenoch, Esquire<br>Kenyon & Kenyon<br>One Broadway<br>New York, NY 10004 | VIA FEDERAL EXPRESS |

*/s/ John G. Day*
_____
John G. Day